1  **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marie Bryant, | No. CV 17-128-TUC-LAB |
| Plaintiff, | **ORDER** |
| vs. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g). (Doc. 1, p. 1)

The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. *See* FED.R.CIV.P. 73; (Doc. 22)

The court finds that the final decision of the Commissioner at step five of the disability analysis is supported by substantial evidence and free from legal error.


PROCEDURAL HISTORY

On October 17, 2012, Bryant filed for supplemental security income pursuant to Title XVI of the Social Security Act. (Tr. 36, 180) She alleged disability beginning on September 1, 2005, due to intercranial hypertension, depression, anxiety, bipolar disorder, back pain, insomnia, and hip problems from childhood. (Tr. 93, 173)

Her claims were denied initially (Tr. 93-96) and upon reconsideration (Tr. 98-101). Bryant requested review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) Peter J. Baum on August 3, 2015. (Tr. 34) In his decision, dated September 25, 2015, the ALJ found Bryant was not disabled. (Tr. 14-16) Bryant appealed, and on January 19, 2017, the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-3) Bryant subsequently filed this action appealing that decision. (Doc. 1)

Claimant's Work History and Medical History

Bryant is five feet one inch tall. (Tr. 203) She weighs 180 pounds. (Tr. 203) She completed the eighth grade in 1991. (Tr. 204) She does not have a high school equivalency diploma. (Tr. 41)

Bryant worked for approximately three years in demolition and construction. (Tr. 204) This work is classified as "very heavy unskilled." (Tr. 27) She was laid off in September of 2009. (Tr. 204, 368, 400) One of the examining physicians reported that "she was struggling at work socially because she would get irritated frequently." (Tr. 368)

*Mental Impairment*

In February of 2013, Bryant was examined by James Rau, Ph.D., for the disability determination service. Bryant described a history of "mood swings and depression." (Tr. 368) She described chronic difficulty with reading, concentration, and memory. (Tr. 368) She scored 23 on the Mini Mental Status Exam, "which is well in the impaired range." (Tr. 370) Rau diagnosed Bryant with mood disorder, not otherwise specified, anxiety disorder, not otherwise specified, and polysubstance dependence in sustained full remission. (Tr. 371) He opined she was moderately limited in the functional areas of Understanding and Memory, Sustained Concentration and Persistence, Social Interaction, and Adapting to Change. (Tr. 372-373)

In February of 2013, Jaine Foster-Valdez, Ph.D., reviewed the medical record for the disability determination service and offered an opinion of Bryant's mental limitations. (Tr. 66) She reported diagnoses for affective disorder and anxiety-related disorder. (Tr. 65) She evaluated Bryant's "B" listing criteria, which gauge the severity of her mental impairment. *See* 20 C.F.R. § 416.920a(c)(3). She found Bryant has "mild" restrictions of her daily activities; "mild" difficulties in maintaining social functioning; "mild" difficulties in maintaining concentration, persistence or pace; and no evidence of decompensation. (Tr. 65) Foster-Valdez further opined that the medical evidence did not establish the presence of the "C" criteria, which are an alternative gauge of the extent of her mental impairment. (Tr. 65) According to Foster-Valdez, the medical record contains sporadic reports of depression and anxiety. (Tr. 65) Treatment notes from October 2011 and May 2012 indicate that Bryant had been prescribed lorazepam and lamotrigine. (Tr. 65-66) On October 2012, Bryant complained of "a lot of stress due to 3 or 4 deaths and a newborn (not hers)." (Tr. 66) Foster-Valdez found Bryant's credibility to be "partial." (Tr. 66) She discounted Rau's report as inconsistent with Bryant's medical records. *Id.* She found Bryant's psychological condition to be non-severe. (Tr. 66)

In October of 2013, Hubert R. Estes, M.D., reviewed the medical record for the disability determination service and offered an opinion of Bryant's mental limitations. (Tr. 83) He agreed with Foster-Valdez that Bryant's mental impairment was non-severe. (Tr. 83)

In October of 2013, Bryant was examined by Gwendolyn W. Johnson, Ph.D., for the Arizona Department of Economic Security. (Tr. 408) Bryant described a history of anxiety and depression. (Tr. 408) She reported poor sleep due to chronic pain. (Tr. 410) Johnson found that Bryant's "immediate, short-term memory and remote memory systems were grossly intact." (Tr. 410) "Her concentration was tested through basic calculations and her performance was good." (Tr. 410) "Bryant scored 28/30 on the Mini Mental State Examination." (Tr. 410) Johnson diagnosed mood disorder, not otherwise specified, and poly-substance dependence, by history. (Tr. 410) Johnson found no evidence of limitation in the functional areas of Understanding and Memory, Sustained Concentration and Persistence, Social Interaction, and Adaptation. (Tr. 411)

*Physical Impairment*

In February of 2013, Lloyd Anderson, M.D., reviewed the medical records for the disability determination service and offered an opinion of Bryant's physical limitations. (Tr. 67-69) Anderson opined that Bryant could lift 20 pounds occasionally and 10 pounds frequently. (Tr. 67) She could sit, stand, and/or walk for 6 hours in an 8-hour day. (Tr. 67) She should only occasionally climb ramps or stairs. (Tr. 68) She should never climb ladders, rope, or scaffolds. (Tr. 68) She could occasionally balance, kneel, crouch, or crawl. (Tr. 68) She could frequently stoop. (Tr. 68) Anderson's opinion suggests that Bryant can perform light work with some exceptions. *See* 20 C.F.R. § 416.967(b).

In October of 2013, L.A. Woodard, D.O., reviewed the medical record for the disability determination service and considered the severity of Bryant's physical impairments. (Tr. 85-87) Woodard agreed with the functional limitations given by Anderson. *Id*.

In September of 2013, Bryant was examined by Jeri B. Hassman, M.D., for the disability determination services. (Tr. 400) Bryant explained that she performed heavy work in demolition and construction until she was laid off in September of 2009. (Tr. 40) Hassman noted that "[h]er main problem is back pain." *Id*. "She complains of aching, stabbing, pins and needles pain from her neck down to her sacrum." *Id*. Hassman opined that Bryant could lift 20 pounds occasionally and 10 pounds frequently. (Tr. 404) She could sit, stand, and/or walk for 6-8 hours in an 8-hour day. (Tr. 404-05) She should only occasionally climb ramps, stairs, ladders, rope, or scaffolds. (Tr. 405) She should only occasionally kneel, crouch, or crawl (Tr. 405) She could frequently stoop. (Tr. 405)

In an undated Work Release form, physician's assistant Nicole James opined that Bryant could never climb ladders, scaffolds, or ropes. (Tr. 616) She could operate moving machinery between 2 and 6 hours per day. *Id*. She could stand, walk, or sit for less than 2 hours per day. *Id*. She could lift and carry 20 pounds for less than 2 hours per day. (Tr. 617) She will need to shift at will between sitting and standing. *Id*. She would be expected to miss 7-10 days of work per month. (Tr. 618)

*Hearing*

On August 3, 2015, Bryant appeared with counsel at a hearing before the ALJ. (Tr. 36) The ALJ noted her protective filing date of October 17, 2012. (Tr. 36) Bryant's attorney informed the ALJ that she would soon receive additional medical reports. (Tr. 38-39) The ALJ agreed to hold the record open for two more weeks. (Tr. 39) Counsel explained that she might schedule Bryant for an additional cognitive exam. (Tr. 39)

Bryant testified that she completed the eighth grade in school. (Tr. 41) She stated that "[a]t times reading is difficult, and writing, words get mixed up, or misspelled words." (Tr. 41) She conceded that she had filled out job applications in the past, but she said "[i]t was hard" to express herself. (Tr. 41) She stated that she had difficulty keeping her checking account balanced. (Tr. 42)

Bryant testified that she could not return to demolition work because of "[t]he standing, the pressure on my legs, my back." (Tr. 42) She continued, "[m]y leg shoots pain like when I'm sitting too long, or standing too long." (Tr. 43) She testified that she has pain in her joints and she limps "[m]ost of the time." (Tr. 43-44)

The ALJ noted that the records from Tucson Orthopedic state that she "didn't have any limp at all." (Tr. 44) Records from Renal Care Associates state that she has "no joint pain at all." (Tr. 44) Bryant disagreed with those records. (Tr. 44)

The ALJ noted that a physical exam in January of 2014 indicated that her legs had normal range of motion and no swelling. (Tr. 45-46) The records state, "[o]n visual inspection, no swelling, edema or redness." (Tr. 45) "Would not allow for range of motion exam." (Tr. 45) "Noted to be ambulating without an issue." (Tr. 45-46) Bryant disagreed with those records. (Tr. 46) She said she gets angry with her doctors because "they make me seem like there's nothing wrong with me, and I know there's something wrong with my legs." (Tr. 50)

The ALJ took testimony from vocational expert Kathleen McAlpine. (Tr. 53) She testified that Bryant's past work in demolition was very heavy and unskilled. (Tr. 54)

CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. § 416.920. The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.*

If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment significantly limits or restricts his or her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). *Id*. If the ALJ concludes the impairment is not severe, the claim is denied. *Id*.

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC)[1] to perform past work. 20 C.F.R. § 416.920(a)(4). If yes, then the claim is denied. *Id*. If the claimant cannot perform any past work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience. 20 C.F.R. § 416.920(a)(4).

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. § 416.945.

1         In determining whether the claimant retains the ability to perform other work, the ALJ may refer to the Medical Vocational Guidelines ("the Grids") promulgated by the SSA. *See* 20 C.F.R. 416.969; 20 C.F.R. Pt. 404, Subpt. P, App.2; *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576-577 (9th Cir. 1988). The Grids categorize jobs according to their exertional requirements such as sedentary work, light work, or medium work. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The Grids calculate whether or not the claimant is disabled based on the claimant's exertional ability, age, education, and work experience. *Id.* The Grids are a valid basis for denying claims where they completely and accurately describe the claimant's abilities and limitations. *Id.* at 1101-02. If the claimant has only exertional limitations, the claim may be resolved based only on the Grids. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006).

        If the claimant has significant non-exertional limitations, the Grids do not apply. *Penny v. Sullivan,* 2 F.3d 953, 958-959 (9th Cir.1993). "Non-exertional limitations are limitations that do not directly affect a claimant's strength." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). Mental limitations, for example, are non-exertional. *Id.* at 1340-41. If non-exertional limitations prevent the claimant from performing a significant portion of the full range of work in any exertional category, the ALJ must take the testimony of a vocational expert to deny the claim. *Id.* at 1341.

### The ALJ's Findings

        At step one of the disability analysis, the ALJ found Bryant "has not engaged in substantial gainful activity since October 17, 2012, the application date. . . ." (Tr. 19) At step two, he found Bryant "has the following severe impairments: obesity and low back disorder. . . ." (Tr. 19)

        At step three, the ALJ found Bryant's impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Tr. 23)

The ALJ then analyzed Bryant's residual functional capacity (RFC). He found "the claimant had the residual functional capacity to perform the full range of light work as defined in 20 CFR 416.967(b)." (Tr. 23) "She can lift/carry 20 pounds occasionally and 10 pounds frequently. She can sit for 6-8 hours in an 8-hour day, and stand/walk for 6-8 hours in an 8-hour day. She can occasionally climb ramps/stairs, and ladders, ropes and scaffolds. She can occasionally kneel, crouch, and crawl. She can frequently stoop. She has no manipulative or environmental limitations. She has no severe mental limitations." (Tr. 23) It appears that this is the RFC given by Hassman, the examining physician. (Tr. 404-05)

At step four, the ALJ found Bryant cannot perform any past relevant work. (Tr. 27) He noted that Bryant is 35 years old, has an eighth-grade education, and worked in an unskilled job. (Tr. 27) At step five, the ALJ found using the Grids that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 27) (citing Rule 202.17, 20 C.F.R. Part 404, Subpart P, Appendix 2.)

STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A] claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept

1  as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a
2  preponderance." *Id.*

3  "Where evidence is susceptible to more than one rational interpretation, the
4  [Commissioner's] decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing
5  court must consider the entire record as a whole and may not affirm simply by isolating a
6  specific quantum of supporting evidence." *Id.*

7  The Commissioner need not accept the claimant's subjective testimony of disability, but
8  if she decides to reject it, "she must provide specific, cogent reasons for the disbelief." *Lester,*
9  81 F.3d 821, 834 (9th Cir. 1995). "Unless there is affirmative evidence showing that the
10 claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must
11 be clear and convincing." *Id.* "General findings are insufficient; rather, the [Commissioner]
12 must identify what testimony is not credible and what evidence undermines the claimant's
13 complaints." *Id.*

14

15 <u>Discussion: Mental Impairment at Step Two</u>

16 Bryant argues first that the ALJ erred at step two of the disability analysis by failing to
17 find that her mental impairments were "severe." She argues that the ALJ improperly discounted
18 the opinion of the examining physician Rau and overlooked "substantial evidence" that supports
19 his opinions. (Doc. 15, pp. 10-13)

20 The medical record contains reports from two examining physicians: a report from
21 James Rau, Ph.D., describing his examination conducted in February of 2013 and a report from
22 Gwendolyn W. Johnson, Ph.D., describing her examination conducted in October of 2013. The
23 reports document Bryant's mental impairment, about which the two physicians are in general
24 agreement. Rau diagnosed Bryant with mood disorder, not otherwise specified (NOS), anxiety
25 disorder, NOS, and polysubstance dependence in sustained full remission. (Tr. 371) Johnson
26 diagnosed Bryant with mood disorder, NOS, and polysubstance dependence, by history. (Tr.
27 410) The two physicians differed substantially, however, in their assessment of the degree of
28 functional limitation resulting from her mental impairments. When Rau administered the Mini

- 9 -

Mental Status exam, Bryant scored 23/30, which is well in the impaired range. (Tr. 370) He opined that she was moderately limited in the functional areas of Understanding and Memory, Sustained Concentration and Persistence, Social Interaction, and Adapting to Change. (Tr. 372-373) Johnson found Bryant much less limited. When she administered the Mini Mental Status exam, Bryant scored 28/30. (Tr. 410) Johnson found no evidence of impairment in the functional areas of Understanding and Memory, Sustained Concentration and Persistence, Social Interaction, and Adaptation. (Tr. 411)

The ALJ noted this discrepancy and decided to adopt the opinion of Johnson and discount the opinion of Rau because the former was consistent with the treatment notes from La Frontera. (Tr. 21-22) He noted that Bryant had received treatment there from April of 2012 to October of 2013. (Tr. 21); *see* (Tr. 272-287); (Tr. 394-398); (Tr. 436-491) "The progress notes indicate that the claimant responded well to treatment with some medication adjustments and individual therapy." (Tr. 21) "Her main concerns were finances, health, and family issues." (Tr. 21); *see* (Tr. 279; 398) "Her mental status examinations were within normal limits, with the exception of some anxious and depressed mood with congruent affect." (Tr. 21); *see* (Tr. 278, 395, 398) The ALJ concluded that Bryant suffers only mild limitation in the functional areas of activities of daily living; social functioning; and concentration, persistence or pace. (Tr. 22-23) She had no episodes of decompensation. (Tr. 23) Accordingly, the ALJ found Bryant's mental impairment to be non-severe. Substantial evidence supports the ALJ's decision to place more weight on Johnson's opinion than on Rau's.

Bryant argues to the contrary that substantial evidence supports Rau's opinion. (Doc. 15, p. 12) The medical record contains references to unstable moods, anger, and irritability. *Id*. She has anxiety around large groups of people and feelings of being overwhelmed. *Id*. Bryant's argument, however, disregards this court's standard of review. As long as the ALJ's decision is supported by substantial evidence, as it is here, it should be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). It does not matter if the evidence could support a different conclusion. *Id*. ("Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld.").

Discussion: RFC Calculation

Bryant further argues that the ALJ failed to take all of her impairments, the severe and the non-severe, into account when calculating her residual functional capacity (RFC). Specifically she argues that the ALJ failed to take into account her mental, knee, and hip impairments. (Doc. 15, p. 13-14)

At step four, the ALJ must take into account all of the claimant's impairments, the severe and the non-severe, when calculating the claimant's RFC. In this case, it appears that the ALJ did just that.

The ALJ states explicitly that his "residual functional capacity assessment reflects the degree of limitation [he] found in [the] 'paragraph B' mental functional analysis." (Tr. 23) Accordingly, the ALJ did incorporate Bryant's mental limitations into his RFC evaluation. Bryant may dispute the ALJ's assessment of the severity her mental limitations, but it appears that ALJ did incorporate those limitations into her RFC.

Moreover, it appears that the ALJ incorporated into Bryant's RFC his assessment of all of her physical limitations, including those caused by her knee and hip impairments. The ALJ states that in making his finding of her RFC, he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR 416.929 and SSRs 96-4p and 96-7p." (Tr. 23) His RFC finding seems to be based on the opinion of the examining physician Jeri B. Hassman. (Tr. 25) Hassman gave Bryant a complete examination noting, among other things, the degree of limitation caused by her hip and knee pain. (Tr. 25) Her findings were incorporated into her assessment of Bryant's ability to lift, carry, sit, stand, and walk, and her assessment of Bryant's postural restrictions. (Tr. 404-405) The ALJ, in turn, adopted these limitations into his RFC calculation. (Tr. 23) The ALJ incorporated into his RFC calculation the limitations caused by all of Bryant's impairments, the severe and the non-severe.

Discussion: Developing the Record

1  Bryant further argues that the ALJ failed in his duty to develop the record. Specifically, she argues that the disagreement between the examining physicians, Rau and Johnson, as to the extent of her mental impairment triggered a duty to engage a third examining physician. (Doc. 15, pp. 14-16)

"The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (punctuation modified). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." *Id*. "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Id*.

In this case, there was a disagreement between the examining physicians, Rau and Johnson, as to the extent of Bryant's mental limitations. This disagreement, however, is not an "ambiguity" that triggers the ALJ's duty to augment the record. *See Gideon v. Colvin*, 2015 WL 5598982, at *7 (E.D. Cal. 2015) ("[D]iffering medical opinions about the severity of Plaintiff's mental impairment" did not constitute an "inadequac[y] or ambiguit[y]" that would trigger the ALJ's duty to develop the record.). It is simply an issue that must be resolved by the ALJ. And here, the ALJ resolved that conflict by determining which opinion was more consistent with the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995) (If medical opinions differ, "it is then solely the province of the ALJ to resolve the conflict."); *Gideon v. Colvin*, 2015 WL 5598982, at *7 (E.D. Cal. 2015) ("While Plaintiff points to differing medical opinions about the severity of Plaintiff's mental impairment, it is the province of the ALJ to resolve conflicts in the medical opinions, and she did so properly here by giving less weight to Dr. Schaeffer's opinion because it was inconsistent with the record as a whole.").

Assuming for the sake of argument that the duty to augment the record was triggered, the ALJ fulfilled this duty by holding the record open after the hearing and allowing Bryant to file a supplement. *See* (Tr. 38-39; 55-56); *Tonapetyan*, 242 F.3d at 1150.

Discussion: Physician's Assistant Nicole James

Bryant further argues that the ALJ improperly discounted the opinion of physician's assistant Nicole James. (Doc. 15, p. 16-18) In an undated Work Release form, James opined that Bryant could stand, walk, or sit for less than 2 hours per day. (Tr. 616) She could lift and carry 20 pounds for less than 2 hours per day. (Tr. 617) This opinion limits Bryant to less than sedentary work. The ALJ gave the opinion "no weight" because he found "it is overly restrictive, and inconsistent and inadequately supported by the medical evidence of records." (Tr. 25)

The ALJ's evaluation of James's opinion is brief but adequate. The ALJ may discount a medical opinion that is not consistent with the medical record. Moreover, as the ALJ observed, James does not indicate what part of the medical record she relied on to support her work restrictions.

The court further notes that James's opinion conflicts with Hassman's opinion, and because Hassman, unlike James, is an "acceptable medical source," her opinion should ordinarily receive deference. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("[O]nly licensed physicians and certain other qualified specialists are considered 'acceptable medical sources'"); 20 C.F.R. 416.913(a)(1) (2016). The court notes for completeness that the rule on "acceptable medical sources" has changed since the Appeals Council denied review in this case. Bryant does not argue that the new rules should apply to her case. *See* (Doc. 15, p. 16) (noting that "[f]or claims filed before March 27, 2017, physician's assistants are not considered 'acceptable medical sources.'").

Discussion: Step Five Analysis

Bryant argues in her supplemental brief that the ALJ failed at step five of the disability analysis to establish that there are significant numbers of jobs in the economy that Bryant can perform. (Doc. 16) Specifically, she argues that the ALJ failed to establish that she has the academic skills necessary to perform "even the simplest, unskilled work." *Id*.

1 At step five, the ALJ concluded that Bryant was not disabled by referring to Grid Rule
202.17. (Tr. 28); 20 C.F.R. 416.969; 20 C.F.R. Pt. 404, Subpt. P, App.2 This Rule applies to
claimants who are limited to light work, are younger individuals, are "at least literate and able
to communicate in English," and whose previous work is "unskilled or none." 20 C.F.R. Pt.
404, Subpt. P, App.2, Table No. 2 Under this Rule, the claimant is not disabled. *Id.*, Rule
202.17.

Bryant argues that the ALJ failed to determine whether or not she has the educational or
cognitive requirements necessary for the Grids to apply to her. The court does not agree. The
ALJ adopted the assessment of the examining physician, Johnson, who assessed the degree of
Bryant's mental impairment. Johnson noted that Bryant "stopped going to school in the 8th
grade and that she had attended regular classes and was receiving poor grades when she stopped
going." (Tr. 408) After her examination, Johnson opined that Bryant was "intact cognitively."
(Tr. 410) She found that Bryant's "intellectual levels appeared average and her attention was
good." (Tr. 410) She found "[n]o evidence of impairment" in the area of "understanding and
memory" and "sustained concentration and persistence." (Tr. 411) Johnson found no cognitive
impairments or educational deficits that would impose any functional limitations, and the ALJ
adopted her opinion. (Tr. 21-22, 411) The findings of the ALJ support his use of Grid Rule
202.17. The court further notes that even if Bryant were absolutely illiterate, the Grids would
still result in a finding of "not disabled" under Rule 202.16. *See* 20 C.F.R. Pt. 404, Subpt. P,
App.2, Table No. 2.

Bryant argues there is evidence in the record that indicates her cognitive abilities are
more limited than ALJ will acknowledge. This argument, however, fails to recognize the
court's standard of review. If substantial evidence supports the ALJ's evaluation of her
cognitive ability, and it does so here, than the decision of the ALJ must be upheld even though
the evidence could support a different conclusion. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir.
2007) ("Where evidence is susceptible to more than one rational interpretation, the ALJ's
decision should be upheld." ).

In her reply brief, Bryant argues the ALJ's use of the light work Grid at step five conflicts with his finding that "she is limited to only occasional kneeling, crouching, crawling and climbing." (Doc. 18, p. 2) This court will not consider issues raised for the first time in a reply brief. *See, e.g., Thompson v. C. I. R.*, 631 F.2d 642, 649 (9th Cir. 1980). In the alternative, the court finds that these postural limitations do not significantly impair Bryant's ability to perform light work. *See Parsons v. Comm'r of Soc. Sec.,* 2012 WL 4468542, at *9 (E.D. Cal. 26, 2012) ("Given that the non-exertional limitations noted by plaintiff—occasional postural activities and occasional interactions with others—do not significantly erode the occupational base of light work, see Social Security Ruling 85–15, the ALJ properly relied on the Grids."). Accordingly,

IT IS ORDERED that the Commissioner's final decision in this matter is AFFIRMED. The Clerk of the Court is instructed to enter judgment accordingly and close this case.

DATED this 27th day of November, 2017.

_Leslie A. Bowman_
Leslie A. Bowman
United States Magistrate Judge